UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Federal National Mortgage Association,<br><br>　　　　　　Appellant,<br><br>— against —<br><br>Hector F. Alarcon,<br><br>　　　　　　Debtor. | **19-cv-5079 (ARR)**<br><br><br><br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

　　Federal National Mortgage Association ("Fannie Mae") appeals from an order of the United States Bankruptcy Court for the Eastern District of New York that denied its motion to reopen the debtor's bankruptcy case. The debtor, Hector F. Alarcon, has not appeared in or responded to this appeal. For the reasons set forth below, I conclude that the bankruptcy court did not abuse its discretion in denying Fannie Mae's motion to reopen the bankruptcy case. Therefore, I affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

　　In December 2014, the debtor, through counsel, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* R. at 5–9, ECF No. 2; *see also* 11 U.S.C. §§ 701–784. The debtor owned a house in Richmond Hill, New York. *See* R. at 12. In his bankruptcy filings, he indicated that a mortgage loan encumbered the house. *See id.* at 12, 17. The original principal amount of the loan was $417,000. *See id.* at 64. Fannie Mae had acquired ownership of this loan in 2007. *See id.*

　　As part of his Chapter 7 filing, the debtor completed a "Statement of Intention" form. *See id.* at 38–39. On this form, he checked a box indicating his intent to "surrender[]" the home. *Id.* at

38. The debtor completed this form pursuant to his duties under 11 U.S.C. § 521(a)(2), which provides that, if a debtor has debts secured by property of his estate, he must "file . . . a statement of his intention with respect to the retention or surrender of such property[.]" § 521(a)(2)(A). The debtor declared, under penalty of perjury, that his markings on this form "indicate[d his] intention as to any property of [his] estate securing a debt[.]" R. at 39.

The bankruptcy court issued its final decree on April 8, 2015, granting the debtor a discharge and closing the bankruptcy case. *See id.* at 48. Almost three years later, in January 2018, Fannie Mae initiated a foreclosure action against the debtor in New York State Supreme Court with respect to the house.[1] *See id.* at 69–70; *see also* Summons & Compl., App. Ex. A at 1–6, ECF No. 11-2 ("FC Action S&C").[2] The debtor filed an answer with counterclaims, wherein he asserted the statute of limitations as an affirmative defense and as a counterclaim. *See* Debtor's Answer with Countercls., App. Ex. B at 10 ¶ 53, 15 ¶¶ 78–87, ECF No. 11-3; Appellant's Opening Br. 4–5, ECF No. 11 ("FM Br."); *see also* N.Y. Real Prop. Acts. Law § 1501 (McKinney 2020) (setting forth the statute of limitations). According to the debtor, the statute of limitations had expired on March 3, 2015—while his bankruptcy case was still open. *See* Debtor's Answer with Countercls., App. Ex. B at 15 ¶ 83. The debtor also asserted several other affirmative defenses and raised several other counterclaims, which Fannie Mae does not discuss with specificity in the instant matter. *See id.* at 1–18. The debtor also filed a quiet title action in state court, which Fannie Mae removed to a court in this district, but this action was voluntarily dismissed pursuant to a stipulation of dismissal. *See* Stipulation of Dismissal, *Alarcon v. Fed. Nat'l Mortg. Assoc.*, No. 19-cv-2349

---

[1] According to Fannie Mae—and as uncontested by the debtor, who has not appeared in or responded to this appeal—after the bankruptcy discharge, it retained the right to recover the price obtained for the real property in a foreclosure sale. *See* Appellant's Opening Br. 4, ECF No. 11.
[2] For clarity, citations to pages of the exhibits to the Appendix to Fannie Mae's brief refer to the page numbers as marked by the ECF header.

(E.D.N.Y. May 22, 2019), ECF No. 8; FM Br. 5 n.2.

In August 2019, Fannie Mae moved in the bankruptcy court for an order reopening the bankruptcy case. *See* R. at 51. It contended that the debtor had no right to contest Fannie Mae's foreclosure action in state court because, on the Statement of Intention filed in his bankruptcy proceeding, he had indicated his intent to surrender the house. *See* R. at 54–55. Accordingly, Fannie Mae asked the bankruptcy court to reopen the bankruptcy case and "enforce the surrender by ordering Debtor to stop contesting Fannie Mae's foreclosure." *Id.* at 54.

The bankruptcy court heard oral argument, at which the debtor did not appear. *See id.* at 138–46. At oral argument, the bankruptcy court identified the standard for reopening a case: "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see* R. at 141:15–18 ("[G]enerally a motion to reopen is in order to deal with unadministered assets or to deal with granting some relief to the debtor or for some other cause[.]"). Fannie Mae argued that, under this standard, "other cause" to reopen the case existed based on the debtor's "abus[e of] the bankruptcy system[.]" R. at 141:18–21. That is, in Fannie Mae's view, when the debtor "chose to surrender the property, he chose to give up all right to the property," and by raising the statute of limitations as an affirmative defense and counterclaim in the foreclosure action, he was "trying to get the property for nothing[.]" *Id.* at 142:11–12, 143:13–16.[3] Fannie Mae argued that the debtor "gave up his right to . . . interfer[e] with [Fannie Mae's] ability to foreclose on the property." *Id.* at 143:19–23.

In making its argument, Fannie Mae relied on a decision from the United States Court of Appeals for the Eleventh Circuit. *See In re Failla*, 838 F.3d 1170 (11th Cir. 2016); R. at 57–58,

---

[3] The discussion at oral argument focused largely on the statute of limitations affirmative defense and counterclaim in particular, and not on the other affirmative defenses and counterclaims.

3

61, 141:10–14, 145:9–11. In *Failla*, the Eleventh Circuit held that 11 U.S.C. § 521(a)(2) "requires debtors who file a statement of intent to surrender to surrender the property both to the trustee and to the creditor." 838 F.3d at 1175. It also held that "'surrender' requires debtors to drop their opposition to a foreclosure action." *Id.* at 1176. That is, "debtors who surrender their property can no longer contest a foreclosure action." *Id.* at 1177. The foreclosure action serves to "ensure that debtors do not have to determine unilaterally issues of priority if there are multiple creditors or surplus if the value of the property exceeds the liability." *Id.* Still, "[d]ebtors who surrender property must get out of the creditor's way." *Id.* In addition, the *Failla* court held that bankruptcy courts have the power to compel debtors "not to oppose [a] foreclosure action in state court." *Id.* at 1179. Fannie Mae argued that it sought the exact same relief that the Eleventh Circuit awarded in *Failla*. *See* R. at 141:10–14.

  The bankruptcy court denied Fannie Mae's motion. *See id.* at 131, 136. Unlike the *Failla* court, the bankruptcy court here reasoned that a debtor's marking his intent to "surrender" property in his petition for bankruptcy "in the practical world doesn't really mean a whole lot." *Id.* at 139:10–13. The bankruptcy court viewed the debtor's checking the "surrender" box as giving "some indication that he's not going to try to save the property" should "a motion for relief from stay" be filed in the bankruptcy proceeding. *Id.* at 140:18–20. The bankruptcy court explicitly disagreed with *Failla*'s conclusion—that a debtor's checking the "surrender" box means that he gives up all rights to the property—expressing that "[i]n Brooklyn that's not the way this works." *Id.* at 142:11–17. It reasoned that if the debtor were to "get the property for nothing" here, that result would arise "because [Fannie Mae] blew the statute of limitations, not because [the debtor] checked the box" back in 2015. *Id.* at 143:1–4, 143:14–18.[4] In the bankruptcy court's view, a

---

[4] In fact, the Statement of Intention form is dated December 23, 2014. *See* R. at 38–39. The

4

debtor's having checked the "surrender" box does not "resurrect[]" a statute of limitations that otherwise would have expired. *Id.* at 145:6–8. The bankruptcy court further reasoned that Fannie Mae could raise its argument before the state court in the foreclosure action. *Id.* at 145:17–18. The bankruptcy court ultimately saw no basis on which to order the debtor not to contest the foreclosure action. *See id.* at 146:1–7. It concluded that

> a motion to reopen is to deal with unadministered assets, again for the benefit of the estate if it were a motion by a trustee or to grant relief to the debtor. It's certainly not for me to effect really a state court determination based upon checking a box I don't know how many years ago when in fact again [Fannie Mae] blew the statute of limitations.

*Id.* at 146:9–14. Accordingly, it denied the motion to reopen. *Id.* at 146:15.

Fannie Mae now appeals the bankruptcy court's denial of its motion to reopen. The debtor has not appeared in or responded to this appeal. Although the docket sheet lists attorney Robert Fox as representing the debtor, this attorney is not actually representing the debtor in this appeal; the debtor is, therefore, *pro se*. *See* Mot., Nov. 6, 2019, ECF No. 4.[5] I instructed Fannie Mae to take exhaustive efforts to ensure that the debtor had notice of this appeal and an opportunity to respond. *See* Orders dated Nov. 12, 2019; Nov. 14, 2019; Nov. 21, 2019; Feb. 12, 2020; Feb. 18, 2020. Ultimately, Fannie Mae served its notice of appeal and its supporting papers on the debtor at his last known address. *See* Wollcott Decl. Ex. A, ECF No. 12-1; Aff. of Service Ex. B, ECF No. 12-2; Fannie Mae Letter, Apr. 3, 2020, ECF No. 12; Aff. of Service Ex. A, ECF No. 8-1; Fannie Mae Letter, Feb. 14, 2020, ECF No. 8; Report Ex. A at 4, ECF No. 10-1; Aff. of Due

---

bankruptcy court's expression that the debtor checked the "surrender" box in 2015 is a close approximation.

[5] Because I was informed that Mr. Fox is not actually representing the debtor, I ordered Mr. Fox to withdraw from this matter and to ensure that he is removed from the docket sheet, but he has not complied. *See* Order, Nov. 21, 2019; Order, Feb. 12, 2020, ECF No. 7. Mr. Fox represented the debtor in the underlying bankruptcy proceeding years ago.

5

Diligent Inquiry Ex. B, ECF No. 10-2; Fannie Mae Letter, Feb. 20, 2020, ECF No. 10. I set a briefing schedule, but the debtor did not file any brief in opposition. *See* Order, Apr. 6, 2020. Therefore, the briefing on appeal consists only of Fannie Mae's opening brief.

## DISCUSSION

District courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). "When reviewing decisions made by the Bankruptcy Court, the district court applies the *de novo* standard of review for questions of law and the 'clearly erroneous' standard of review for questions of fact." *In re Nemko, Inc.*, 202 B.R. 673, 677 (E.D.N.Y. 1996). The district court reviews a bankruptcy court's decision granting or denying a motion to reopen for abuse of discretion. *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996) (citing *Bartle v. Markson*, 357 F.2d 517, 523 (2d Cir. 1966)); *see In re I. Appel Corp.*, 300 B.R. 564, 567 (S.D.N.Y. 2003), *aff'd*, 104 F. App'x 199 (2d Cir. 2004) (summary order). This abuse of discretion standard of review applies because decisions granting or denying motions to reopen "invoke the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *Chalasani*, 92 F.3d at 1307 (citing *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). A court "has 'abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence,' or rendered a decision that 'cannot be located within the range of permissible decisions.'" *In re Euro-Am. Lodging Corp.*, 549 F. App'x 52, 53 (2d Cir. 2014) (summary order) (alteration in original) (quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)). "When competing, reasonable interpretations of an issue of discretion exist, neither of which is binding on a court, it cannot be held an abuse of discretion for a court to adopt either view." *In re I. Appel Corp.*, 300 B.R. at 570 (citing *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

A bankruptcy court may reopen a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "Motions to reopen are committed to the sound discretion of the [bankruptcy] court." *In re Garland*, 501 B.R. 195, 199 (Bankr. S.D.N.Y. 2013) (citing *In re Clark*, 465 B.R. 556, 559 (Bankr. D. Idaho 2011)). In deciding whether to reopen a bankruptcy case, a court should "emphasize substance over technical considerations." *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) (quoting *In re Stein*, 394 B.R. 13, 15 (Bankr. E.D.N.Y. 2008)). Further, "[t]here must be some potential relief that is available to a movant in a reopened case; otherwise reopening is pointless, and the § 350(b) motion will be denied." *In re Garland*, 501 B.R. at 199 (quoting *In re Clark*, 465 B.R. at 559). The Bankruptcy Code does not define what constitutes "other cause" to reopen a case. *In re I. Appel Corp.*, 300 B.R. at 571. However, "courts typically examine the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors." *Id.*; *see In re Easley-Brooks*, 487 B.R. 400, 406–07 (Bankr. S.D.N.Y. 2013) (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004), *vacated sub nom. on other grounds by Crayton v. Otto*, No. 04-CV-02506, 2005 WL 8153750 (E.D. Pa. Mar. 31, 2005)) (listing additional, but overlapping, factors that courts may consider). "The moving party has the burden of establishing cause to reopen." *In re Arana*, 456 B.R. at 172.

Here, Fannie Mae primarily argues that "other cause" existed to reopen the bankruptcy case because, by opposing the foreclosure action in state court, the debtor was acting counter to his previously stated intent to "surrender" his house. FM Br. 10–20. He thereby ran afoul of § 521(a)(2) of the Bankruptcy Code and abused of the privilege of having received a discharge in bankruptcy. *See id.* at 9–10.

Fannie Mae relies heavily on the Eleventh Circuit's decision in *Failla*. *See id.* at 11–16 n.9, 21–24 (citing *Failla*, 838 F.3d at 1173–79). In *Failla*, the Eleventh Circuit analyzed the plain

7

meaning of § 521(a)(2), which states, in relevant part, that a debtor filing for bankruptcy must file "a statement of his intention with respect to the retention or surrender of" any property that secures a portion of his debt. 11 U.S.C. § 521(a)(2)(A). Then, the debtor must "perform his intention[.]" § 521(a)(2)(B). *Failla* held, in part, that "[b]ecause 'surrender' means 'giving up of a right or claim,'" § 521(a)(2) prohibits a debtor who indicates an intent to "surrender" his property from opposing a foreclosure action with respect to that property in state court. 838 F.3d at 1176–77; *see In re Woide*, 730 F. App'x 731, 735–36 (11th Cir. 2018) (per curiam) (applying *Failla* and holding bankruptcy court did not abuse discretion by reopening case to afford relief to Fannie Mae when debtors stated intention to surrender home but defended against foreclosure action in state court); *In re Seguinot*, No. 6:10-bk-05336-KSJ, 2018 WL 3533345, at *1–3 (Bankr. M.D. Fla. Mar. 9, 2018) (applying *Failla* and concluding that debtors' opposition to foreclosure contradicted their stated intention to surrender property, warranting reopening of bankruptcy case). Various other courts have interpreted the word "surrender" in the Bankruptcy Code to have a meaning similar to the one that the Eleventh Circuit ascribed to it, though not all of these courts so interpreted "surrender" in the context of deciding whether a debtor may oppose a foreclosure action in state court. *See In re Pratt*, 462 F.3d 14, 18–19 (1st Cir. 2006) (interpreting "surrender" in § 521(a)(2) to mean that debtor agreed to cede possessory right in property but ultimately deciding different issues than those in *Failla*); *Razzak v. Wells Fargo Bank, N.A.*, No. 17-cv-04939-MMC, 2018 WL 1524002, at *4 (N.D. Cal. Mar. 28, 2018) (concluding that plaintiffs' attempt to enjoin defendant from foreclosing on property was inconsistent with agreement in bankruptcy proceeding to surrender such property and finding plaintiffs' claim for injunction against foreclosure was therefore barred); *Hull v. Wells Fargo Bank, N.A.*, No. 6:15-cv-01990-AA, 2016 WL 1271675, at *4 (D. Or. Mar. 28, 2016) (finding that plaintiff's decision to file two new bankruptcy petitions

8

and civil lawsuit in attempt to inhibit or invalidate defendant's foreclosure gave rise to inference that plaintiff never intended to surrender property and concluding that plaintiff was therefore judicially estopped from challenging validity of foreclosure sale); *In re Stephens*, No. 09–62630, 2013 WL 1305576, at *9 (Bankr. N.D.N.Y. Mar. 28, 2013) (concluding that statement of intention to "surrender" property requires debtor "to relinquish any claim to possession in it within 30 days of the petition" but deciding different ultimate issue than in *Failla*); *see also In re White*, 487 F.3d 199, 205 (4th Cir. 2007) (interpreting "surrender" in different Bankruptcy Code provision, § 1325(a), to mean "the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another").

However, the bankruptcy court was not bound to follow *Failla*, and it was not an abuse of discretion for it to decline to do so. The bankruptcy court considered *Failla* and rejected its approach. *See* R. at 140:2–5, 141:10–19, 142:15–17, 143:1–4, 145:9–18. The bankruptcy court reasoned that it was Fannie Mae who had jeopardized its own foreclosure action by filing it after the statute of limitations had expired. *See id.* at 139:17–22, 141:24–142:2, 142:21–143:4, 143:17–145:8, 146:9–14. It declined to read "substantive weight" into the debtor's act of checking the "surrender" box on his Statement of Intention form several years ago in order to relieve Fannie Mae of its obligation to abide by the state statute of limitations. *Id.* at 143:1–4, 145:3–8. The bankruptcy court expressed its own view of the limited significance of the "surrender" checkmark: the checkmark "gives [the bankruptcy court] some indication that [the debtor is] not going to try to save the property" in a "motion for relief from stay[.]" *Id.* at 140:16–20. It does not, without more, require the debtor to "hand the property over[,]" as Fannie Mae must still "commence[] a foreclosure action" in order to exercise any claim that it has in the subject property. *Id.* at 140:23–

9

141:2. In such a foreclosure action, the statute of limitations defense is available. *See id.* at 142:21–22. In sum, the bankruptcy court declined to save Fannie Mae from its own failure to abide by the statute of limitations in state court by reopening a case to adopt an out-of-circuit rule that would afford significantly more weight to a checkmark on a several-year-old form than was required in this circuit. Absent any binding Second Circuit precedent on the issue, such a decision was well within the bankruptcy court's discretion. *Cf. In re I. Appel Corp.*, 300 B.R. at 570 (citing *Zervos*, 252 F.3d at 169) ("When competing, reasonable interpretations of an issue of discretion exist, neither of which is binding on a court, it cannot be held an abuse of discretion for a court to adopt either view."). Nor was the bankruptcy court obligated to adopt the *Failla* approach with respect to any of the debtor's other affirmative defenses or counterclaims, as, again, such approach is not binding in this circuit, and the same logic as with respect to the statute of limitations defense presumably applies.[6]

Indeed, a bankruptcy court in the Middle District of Florida—within the Eleventh Circuit, where *Failla* is binding—has limited *Failla*'s application and declined to reopen a case in a posture similar to the instant one. In *In re Ayala*, that bankruptcy court considered whether to reopen an approximately five-year-old case "to prevent the former debtors from contesting a foreclosure because they 'surrendered' the underlying property in their long-closed chapter 7 case." 568 B.R. 870, 871 (Bankr. M.D. Fla. 2017). The debtors contested the foreclosure action on the basis that they had not defaulted on their loan. *See id.* In denying the motion to reopen, the court reasoned that *Failla* did not make it *mandatory* for bankruptcy courts to prohibit debtors from contesting state-court foreclosure actions in all cases where they have indicated their intentions to surrender.

---

[6] Fannie Mae has not set forth any argument suggesting that any additional considerations, besides those discussed with respect to the statute of limitations, should govern my analysis with respect to the debtor's other affirmative defenses and counterclaims.

10

*See id.* at 873–74. Rather, the analysis is fact-specific. *See id.* The court concluded that "certainly not all foreclosure defenses after the conclusion of a bankruptcy case reflect abuse of bankruptcy process." *Id.* at 874. Thus, when no foreclosure action was pending at the time that the debtors filed their bankruptcy petition, the debtors had made some mortgage payments after the bankruptcy case closed, and the lender waited for five years after the debtors had signed their Statement of Intention forms before moving to reopen the bankruptcy case, "cause" to reopen was not present. *Id.* at 873–74. Here, as in *In re Ayala*, Fannie Mae's foreclosure action was not pending at the time that the debtor filed for bankruptcy or signed his Statement of Intention form. *See* FC Action S&C (dated January 31, 2018). And here, too, Fannie Mae moved to reopen approximately five years after the debtor signed his Statement of Intention form. *See* R. at 38–39. It is true that the *In re Ayala* court gave some indication that the assertion of an affirmative defense in state court—as opposed to an assertion that the loan was not in default, which goes to a component of the lender's burden of proof—might, in some cases, weigh in favor of finding an abuse of the bankruptcy process. *See* 568 B.R. at 873. However, in opining on *Failla*'s limitations, the *In re Ayala* court asked: "Can a lender wait 10 years to foreclose and then prevent the debtor from raising a statute of limitations defense?" *Id.* It concluded that this "issue[ was] explored extensively at oral argument [in *Failla*] without satisfactory resolution." *Id.* Thus, it is not even settled law that *Failla* would require the reopening of the instant case within the Eleventh Circuit—let alone in the Eastern District of New York. In fact, the *Failla* rule is by no means universally accepted outside the Eleventh Circuit. *See Costello v. Wells Fargo Bank Nat'l Assoc.*, No. 16-cv-1706 (VAB), 2017 WL 3262157, at *8 n.4 (D. Conn. July 31, 2017) ("The Court also notes that there may be reasons to doubt the validity of the rule established in *Failla*, but does not opine on this question."), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) (summary order); *Skibbe v. U.S. Bank. Tr., N.A. ex rel. LSF9*

11

*Master Participation Tr.*, No. 16 C 192, 2017 WL 2506405, at *6 (N.D. Ill. June 9, 2017) ("The holding from *In re Failla* is not uniformly followed, and the Seventh Circuit has not opined on the matter."); *In re Ryan*, 560 B.R. 339, 350 (Bankr. D. Haw. 2016) ("[T]he [debtors'] statement that they intended to 'surrender' the residence and their surrender declaration do not, as a matter of bankruptcy law, preclude the [debtors] from defending against a foreclosure or asserting claims based on an allegedly improper foreclosure."), *vacated on other grounds and remanded by* Nos. HI–16–1391–TaLB, 09–01604, 2018 WL 1938512 (B.A.P. 9th Cir. Jan. 4, 2018).[7]

In addition, the bankruptcy court considered that Fannie Mae may raise its argument—that the debtor is barred from opposing the foreclosure action because he indicated his intention to "surrender" the property—in the state court foreclosure action. *See* R. at 145:17–18. It also considered that the bankruptcy proceedings concluded several years ago. *See id.* at 143:1–4. That the bankruptcy court considered these factors further weighs in favor of finding that it acted within its discretion. *See In re Easley-Brooks*, 487 B.R. at 406–07 (listing "the length of time that the case was closed" and "whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case" as factors that bankruptcy courts may consider on motions to reopen).

It is true that, as Fannie Mae highlights in its brief, the bankruptcy court expressed that it "believe[d] that a motion to reopen is to deal with unadministered assets, . . . for the benefit of the estate if it were a motion by a trustee or to grant relief to the debtor" just before it announced its ruling at the close of oral argument. R. at 146:9–11; FM Br. 6–7, 10. It is also true that this

---

[7] In vacating the bankruptcy court's decision after *In re Ryan* became moot, the Bankruptcy Appellate Panel of the Ninth Circuit observed that "*Failla*, even if otherwise correct (a determination we do not make), does not suggest that a secured creditor no longer needs to comply with state foreclosure law." 2018 WL 1938512, at *3 n.4.

12

statement, standing alone, is an incomplete articulation of the standard on a motion to reopen, which provides in full that the bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, *or for other cause*." 11 U.S.C. § 350(b) (emphasis added). However, it is not true that, as Fannie Mae asserts, the bankruptcy court "disregard[ed]" the "other cause" component of the standard and "focused solely on whether the Motion was brought to deal with un-administered assets or for the benefit of [the] Debtor" in conducting its review. FM Br. 7, 10. Rather, as is apparent elsewhere in the oral argument transcript, the bankruptcy court considered the full standard on a motion to reopen: it articulated that "generally a motion to reopen is in order to deal with unadministered assets or to deal with granting some relief to the debtor or for some other cause[.]" R. at 141:16–18. Further, the bankruptcy court explicitly acknowledged that the "other cause" component of the standard was relevant in the proceeding before it; the court stated "you want me to stick this into the 'some other cause' section[,]" to which Fannie Mae's attorney responded, "[t]hat's correct, your Honor." *Id.* at 141:18–20. Therefore, it is clear that, despite its incomplete statement of the law in announcing its decision, the bankruptcy court applied the complete, proper legal standard. After applying that standard, it concluded that Fannie Mae's asserted grounds for reopening did not constitute cause to reopen the case. *See* R. at 146:12–14.

In addition, Fannie Mae highlights the bankruptcy court's suggestion that perhaps the debtor checked the "surrender" box without understanding what "surrender" meant. FM Br. 18 n.10; *see* R. at 140:10–15. Fannie Mae argues that, because the debtor was represented by counsel in the underlying bankruptcy proceeding and therefore should have understood the implications of checking the "surrender" box, the bankruptcy court "abused its discretion by relying on hypothetical facts not in the record and not pertinent to the question before it" in making its ruling. FM Br. 18 n.10. However, at oral argument, Fannie Mae informed the bankruptcy court that the

13

debtor was represented by an attorney when he filed for bankruptcy. *See* R. at 140:16–17. The bankruptcy court responded, "[r]ight." *Id.* at 140:18. The court thereby seems to have impliedly acknowledged that the debtor should have understood the implications of checking the "surrender" box. It proceeded to explain the limited significance that it accords to the "surrender" checkmark and to reject Fannie Mae's arguments as discussed above. Therefore, I disagree with Fannie Mae's contention that "the Bankruptcy Court abused its discretion by relying on hypothetical facts not in the record and not pertinent to the question before it." FM Br. 18 n.10. The bankruptcy court's subsequent reasoning makes clear that, even when debtors are fully informed, the "surrender" checkmark has limited significance in the Eastern District of New York and cannot save Fannie Mae from the state-court statute of limitations.

Finally, Fannie Mae argues that, after reopening a case, a bankruptcy court has the power to order a debtor who has indicated his intent to surrender property to stop contesting a foreclosure action in state court. *See* FM Br. 20–24. Bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). *Failla* held that "[t]he bankruptcy court had the authority to compel the [debtors] to fulfill their mandatory duty under section 521(a)(2) and not oppose the foreclosure action in state court." 838 F.3d at 1179. The bankruptcy court considered Fannie Mae's request that it issue such an order and concluded that it had "no basis for doing that." R. at 146:1–7. Because the bankruptcy court acted within its discretion in determining that cause did not exist to reopen the bankruptcy case, I need not determine the extent of the authority that the bankruptcy court would have had to issue an order affecting the state court proceeding if it had, instead, granted the motion to reopen. It suffices to say that, assuming, without deciding, that the bankruptcy court had the power that Fannie Mae asserts that it does, it was under no obligation to exercise it for all

of the reasons that I have discussed.

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not abuse its discretion in denying Fannie Mae's motion to reopen. Thus, the bankruptcy court's decision is affirmed. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      June 11, 2020
            Brooklyn, New York